Microsoft Office Word Microsoft Office Title Microsoft Office Word Document MSWordDoc Word.Document.8 Well We're not relying on new matter if you read claim 37 you'll find that claim 37 reads verbatim literally on every element of the original Application filed in 1982 There's no dispute about that Well, I think that's exactly the dispute as I understand it that the dispute is that that the application has filed in 82 Didn't disclose multi threading. It didn't disclose Two separate threads and the reasons were false the reasons were that one one allegedly the the Editor could not be interrupted false and the second reason was that the preemption The editor was not capable of preemption, but no editor is capable of preemption never was Mr. Ivan, I thought your argument was that assuming that the matter added in 1990 is limited to 1990 that there was no intervening prior art that would make any difference. Did I Misunderstand that I was true at the time that was in 1999, but since then Microsoft has Relied upon a 1988 Disclosure of a failed OS to operating system, which made that intervening Okay, because I I had thought that You weren't relating back relating the 1990 disclosure back to 1982 which did not have the details of multi-threading. Oh, no the detailed description and drawings of the 82 application were Identical to those of the 1990 application which ripened into the 603 patent They were made on a copy machine and as exact as a copy machine can make them they were the same Okay, so then it's agreed that you must demonstrate entitlement or full Adequate written description based on the text of 1982. Oh, yes the detailed description every nut bolt wire Semiconductor was exactly the same as in the 1990 application Now Since the reversal of the first summary judgment Microsoft has Invented some new falsehoods, which I thought this well what this proceeding was about These false arguments were protected from exposure By Microsoft's 12 years of refusal to submit to any discovery They have not produced a single document requested under rule 34 of the FRCP Now these falsehoods Can be identified very briefly one is The right fit editor is not Interruptible Every editor is interruptible the interrupt mechanism has no Awareness control or knowledge of what is being executed at the time of the interrupt There is no communication whatever any Thread that is in process of being executed is interrupted at the instant of the interrupt Now they have tried to confuse that issue by resorting to the non elected species in which the editor is not interrupted by virtue of the fact that the Interrupts are prevented from actuating Which has nothing to do with the claimed invention There are 41 claims every one of the 41 claims is directed to the clock activated embodiment Microsoft is relying upon the unclaimed keyboard activated embodiment in which interrupts are not Allowed to interrupt the editor until the editor is completed That's a different story entirely different embodiment and involves different Considerations Now another falsehood is That the right fit editor is not preempted well, no Editor in the entire history of Computing in the entire history of multi-threading has ever been preempted for very good reasons To do so would destroy the feedback from the screen to the user As the user types we assume he's not a professional typist as usually not He makes mistakes misses a keystroke Presses a keystroke not far enough to register But he's immediately informed of that the way things are because his keystroke does not appear instantly on the screen and He has this feedback If you are allowed preemption of an editor The absence of any image on the screen corresponding to the keystroke would be meaningless because it might mean Merely that the editor was preempted It would not provide feedback to the operator telling him he missed the keystroke so for that reason there has never been a preempted editor and For those two reasons alone Microsoft's new grounds are untenable. They're on the false every editor every Every Thread is Interruptible there's nothing to stop it if the interrupt occurs bang the thread loses control of the CPU No thread no editor Thread is preemptible for the reasons. I've stated The typist would be flying blind in effect blindfolded with no awareness. Whatever as to whether or not His or her keystrokes were being recorded on the screen Now we have two other problems with Microsoft's new version of this One is Dr. Lyklama he is offered as the expert Microsoft Had dr. Lyklama sir sign his Declaration he admitted he didn't look at it change it read it over and It contains flagrant errors for example Doc looks dr. Lyklama became familiar with multi-threading in 1968 now we had to have that date because the patent office had ruled five times that my Effective filing date was in 1982 so to be to qualify he had a An understanding what the state-of-the-art was as of 1982 at least Well, he said that he became familiar with multi-threading in 1968 however During his deposition When he was not aided by Microsoft scripts, he came to a vastly different story He admitted that in 1982 Neither he nor anyone in the field Knew anything about multi-threading He's at least 14 months off there So that is a falsehood Mr. Rafferty, I need to interrupt because we're running over time and as I recall these points are made forcefully in your briefs Try to make them forcefully may I just end with three challenges okay two minutes I Challenge my learned opponent to explain how it is physically possible for any thread to avoid being interrupted when an interrupt occurs To to cite even a single instance of a preempted editor three to identify any limitation of claim 37 as set forth in my brief Which does not read literally on my 82 disclosure Thank you. Thank you. Mr. Rafferty Mr. Segal may it please the court The district court did exactly what this court told it to do in 2000 which was to go back and look at the 1990 application is filed to see if it had adequate written description support for the 603 patent Well, the issue was written description with Support in the 1990 patent not the 80s problems The 603 patent issued in 1997 from an application filed in 1990 Mr. Rifen did claim priority back to an earlier predecessor in 1982 But what this court said in its opinion in 2000 was to go back and look at the 1990 application Which was the application as filed in 90 exactly not including the material in column 1 and 2 that I pointed out exactly and so the district court did that the district court went back and had a claim construction proceeding and then it compared the construed claims to the issued claims in the 603 and the 603 patent claims are directed to this idea of time-slice preemptive multi-threading and time-slice preemptive multi-threading means You have multiple threads of computer instructions Those claims were all filed like the claim 37 was not part of the original 1990 application as filed, correct? Correct I'm talking about what the issued claims actually mean and the issued claims doesn't I just want to make sure that they weren't part of The application as filed because if so, they'd be part of the spec and they would constitute part of that description support Absolutely, not the 1990 original claim quite different. Mr. Reif and he what he did is he read about OS to an operating system developed and commercialized by Microsoft and IBM Talked to that operating system had multi-threading technology. Mr. Reif and later start years after following the 1990 application. He started adding that subject matter into his application He he added a couple of paragraphs that your honor pointed to and he completely transformed his claims Over seven and a half years of prosecution in any sense of how someone could add an entire column of material during prosecution I've just never seen an examiner allow that before but the examiner allowed it here. So why? What what should I make of that? Well, there is certainly a lot of I guess I would call it fight I mean there is a look there are a lot of rejections a lot of back-and-forth a lot of amendments their appeals to the board Well amendments to claims but amendments to spec the spec are quite unusual, right? Agreed it was he was allowed to add is what essentially is new matter and that is very unusual and Very rare if I were to include in my analysis all of what is in client columns one and two Your argument would be much more difficult, wouldn't it? The notion that multi-threading wasn't disclosed in this patent. If I were to include all the material he added it comes one and two that the specific quotes he points to Then doesn't your argument on written description become very difficult to succeed on If that language is it was in the 1990 application is filed. Yeah It Certainly some of the arguments might become more difficult but there are certainly other arguments why it wouldn't be one reason is the claim certainly have to Or the or the application the disclosure has to describe the full scope of the claims And so you still have to look at what what is the full scope of the claim subject matter? But but here the Claim subject matter it is this idea of threads that are periodically interrupted before they finish their task and that that can affect the control is switched back and forth between these threads in a round-robin interleave fashion and With the 1990 application it it disclosed just the opposite It didn't work that way the editor once the editor got control the the interrupted. Is it the opposite? Was it a matter of filling in details It was much different your honor the the in the 1990 application the compiler editor The interrupt mechanism was automatically disabled. The only interrupt mechanism that was disclosed was this this IMT star pin and that pin was automatically disabled whenever there was an interrupt and the the 1990 application clearly says that After the editor that Once there's a net once there's an interrupt and the editor takes control the editor runs to completion it finished What's it has to do and then the interrupt mechanism? The interrupt mechanism is re-enabled and control returns back to the compiler So it operated with the interrupt mechanism disabled it couldn't be interrupted It was like a freight train at a railroad crossing once it starts executing it can be short can be long But it can't be interrupted It can't be preempted and and so that's quite the quite the dip quite different than the time-slice preemptive multi-threading that actually is in the claims and I would add that The mr. Riven pointed to claim 37. Well one of the claim terms in 37 claim 37 requires multiple threads two different threads and in threads have to be interruptible they have to have the context saved and retrievable and The 1990 application didn't disclose that it disclosed the compiler and editor and the editor couldn't be interrupted and it didn't have its context saved and retrieved and the This this argument about lexical analysis and syntactical analysis the 1990 application It didn't talk about control being switched back and forth between a syntactical analysis thread and a lexical analysis thread It was a very clear mode of operation that the 1990 application were describing it was this compiler executes, it's Interrupted interrupts are disabled the editor runs until completion and then interrupts can be re-enabled and returned to the controller And The claim construction that threads can be interrupted and that this mode of operation is this back and forth back and forth like that I alluded to that claim construction it flows from the claim language That the issue claim language it flows from the new matter portions of the specification that Mr. Griffin added by amendment for instance a summary of invention section at Column 1 lines 45 through 65 made clear that threads are interrupted at the end of a time slice before the complete its task and then control is then sent to another thread and back and forth like that and this That claim construction is also supported by many Statements in the prosecute prosecution history by Mr. Reif and after he started adding this matter into his application After 1992 a couple years after he filed the application He started making very clear statements that that that's the mode of operation that he was claiming and that these threads were interruptible and preemptible And and then he district he had to distinguish the prior art and he distinguished the prior art on the same grounds And also this court recently just in 2009 Considered the same issue. It was the Related patent 604 patent, which was also in suit. It was also before judge Walker Mr. Reif and put that patent in a re-examination Patent office rejected it board of patent appeals of interferences Rejected it and it came up this court and this court affirmed the rejection and included the construction that threads have to be interruptible and mr. Reif and 1990 application. However, the compiler editor it didn't describe multiple interruptible threads So in short the the the editor as disclosed in 1990 it couldn't be time-sliced it couldn't be preempted it was not a thread and So under the written description case law the 1990 application did not disclose The the the claimed invention which was this idea this idea of multiple threads of time-sliced execution and so, I mean that's why we have the written description requirement is to keep patent applicant from overreaching and Claiming something that he didn't describe and didn't invent at the time of filing Now I Guess there are a couple other points. Mr. Reif and points to the Tries to argue that will rely that Microsoft is relyinging on the keyboard in Embodiment in the application not the clock embodiment embodiment. Well in the The the one paragraph in the application that talks about a clock it refers back to the same portion of the specification where it says that the the editor runs to completion and The the interrupt mechanism has to be re-enabled before the compiler gets control again So they are they there the clock embodiment does rely on the same Disclosure in the text and as far as the Drawings. Mr. Reif and in his reply brief at page 7 he refers to a couple of drawings that supposedly gives support for this idea that the The editor is interruptible, but those drawings were added by amendment those drawings drawings 1a and 2a That he mentions in his reply brief were not part of the 1990 application So he can't rely on those for written description support in any way. Mr. Siegel. I'd like to ask you about your so-called cross appeal on the ground of the latches Isn't latches simply another ground on which Your judgment can be affirmed Prosecution latches your honor. Yes, the the the district court Found for mr. Reif and on the issue of prosecution latches the district court found that the we had a bench trial and You you you won this case on the ground of invalidity of the patent for lack of written description in the 1990 patent So you've won so Isn't the argument about latches prosecution latches simply another argument to sustain your victory? In Other words what more and if that's the case, it's an improper cross appeal you can make the argument and your main argument But but you you by calling it a cross appeal You get more Words in your brief you give your opponent the opportunity to file a 14,000 word Brief rather than 7,000 which he took advantage of and you try you file a fourth brief So I'm asking whether that was a proper cross appeal Well, it was your honor. We why because if the if this court were to Find there's some question of fact as to the summary judgment of patent and validity on a written description Then then the case could go back. Well, that's another argument for sustaining In other words if we didn't agree with the court below Unwritten description then your point is we should we should find for you on latches What we're asking with the cross appeal is merely if the case if the court doesn't affirm the validity summary judgment that the Actually, we're not asking that this court find for us for prosecution latches but merely would ask the court the district court to to Reconsider its its rulings because your latches argument is an alternative ground for you to prevail upon, correct? It could be yes Well, I think that the point as I understand it that judge Lurie is making is that's that's something you're free to argue in your Red brief, but it doesn't make you a cross appellant across appellant. Is you telling us there's some Judgment that is incorrect below over which you want us to decide right now that would enlarge The rights you obtained from winning below. I Think you better read our cases This just sounds like this was an improper cross appeal. It gave you certain Advantages that you should not have had so I think you ought to read our case law about what is a proper cross appeal What is it? We needn't belabor the point, but Okay. Thank you. If there are no other questions on either issue. I'll just okay. Thank you. Mr. Seager Mr. Rifen what do you have just been listening to is false? There are two different embodiments in this patent one of them is the Keyboard activated interrupt. The other is the clock activated interrupt in the keyboard activated interrupt The interrupt is disabled until the editor finishes processing the keystroke That is not what happens in the clock activated interrupt in the clock activated interrupt Interrupts occur every 20 to 30 milliseconds that is the way it is set forth in the specification That's about 50 times per second there is no disablement The elected All of this material what was it in your 1990 application that was added by subsequent amendment it was in the Written description, which is identical in both the 1982 case and the 90 application This Statement that interrupts occur every 10 to 30 milliseconds is in the written description of both applications Now to argue that there was a disablement and therefore there was no interrupt is false because all 41 claims are directed to the Clock-activated embodiment not a single claim was directed to the keyboard activated embodiment Now whenever an interrupt occurs Whatever is it being processed is inevitably inexorably interrupted And when you have the interrupt occurring 20 to 30 times 20 or 30 times In milliseconds that it's about 50 times per second You cannot avoid interrupting whatever is being executed I'm looking at the we're looking at the wrong embodiment of the clock integrated Activated interrupt Material isn't that in column 1 which was added? No later that that is also in column 13, which was not added Towards the very end. I see it was always in there from beginning to end The disclosure always had these two embodiments one where the interrupt was disabled Keyboard activated the other where where the interrupt was Never disabled clock activated it went like clockwork, so to speak Every 20 milliseconds every 30 milliseconds There was an interrupt and nothing could prevent whatever is being executed from being interrupted Now As for 1a and 2a figures of the drawings They were added and they show merely what was already disclosed in the specification they show that the trigger on the priority encoder which activates the interrupt eventually instead of being Activated by a line from the keyboard and the keyboard activated interrupt system It was activated by a box called clock with a line from the box to that trigger point It was the only change and that was not new matter because it merely described what was described in the specification And in the entire prosecution of these cases for 15 years No examiner No board had ever said there was anything That we could be called new matter in this entire entire procedure of 15 years except once one board said that Asynchronous was inappropriate So so we took out asynchronous other than that. There was no complaint about new matter Any more questions Okay, thank you, mr. Rifen and mr. See you the case has taken over submission